UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMES GIST,

        Plaintiff,

     v.

THE BURLINGTON COAT FACTORY
WAREHOUSE CORP., et al.,

        Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 13-1094
     (JEI/KMW)

**OPINION**

**APPEARANCES:**

KARPF, KARPF & CERUTTI, P.C.
By:  Ari R. Karpf, Esq.
    Katie A. Pilgren-Beatty, Esq.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, Pennsylvania 19020
    Counsel for Plaintiff

EDWARDS WILDMAN PALMER, LLP
By:  Marcy A. Gilroy, Esq.
44 Whippany Road
Morristown, New Jersey 07960
    Counsel for Defendants

**IRENAS**, Senior District Judge:

    Plaintiff James Gist brings claims against Defendants

Burlington Coat Factory Warehouse Corp. and Burlington Coat

Factory Warehouse of Edgewater Park Urban Renewal Corp.

1

("Burlington"),[1] and Joseph Guthrie ("Guthrie") for violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*[2]  Pending before the Court is the Defendants' motion for summary judgment.  For the reasons set forth below, this motion will be granted in part and denied in part.


## I.

The Court recites those facts relevant to deciding the pending motion for summary judgment and resolves any disputed facts or inferences in favor of Plaintiff, the nonmoving party.

Plaintiff, an African-American male, started working at Burlington on or about July 18, 2011.  (S.M.D.F. ¶ 1; A.S.U.M.F.[3] ¶ 1)  Plaintiff initially worked in the shipping department, where he quickly received a raise and advanced to a clerical position.  (James Gist Dep. at 27:19-29:22, Oct. 17, 2013; A.S.U.M.F. ¶ 1)  Plaintiff subsequently applied for a mechanic position in Burlington's maintenance department, which Plaintiff

---

[1] Defendants' Answer asserts that the named Defendants "Burlington Coat Factory Warehouse Corp.," and "Burlington Coat Factory Warehouse of Edgewater Park Urban Renewal Corp.," are improperly named.  Rather, these named Defendants are a single entity known as "Burlington Coat Factory Warehouse of Edgewater Park, Inc."  For purposes of this Opinion, the Court will use the Defendant's amended name, or refer to the Defendant as "Burlington."
[2] This Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1367.
[3] "S.M.D.F." refers to Plaintiff's Statement of Material and Disputed Facts.  "A.S.U.M.F." refers to Defendants' Amended Statement of Undisputed Material Facts.

obtained after interviewing with Guthrie, Defendant's maintenance manager. (Gist Dep. at 32:13-33:19; Joseph Guthrie Dep. at 8:2-8:14, Dec. 19, 2013)

While Plaintiff received positive performance reviews, Plaintiff also incurred disciplinary action during his employment with Burlington. (See, e.g., Performance Appraisal – 2011 Year End for James A Gist III, S.M.D.F. Ex. C; Emp. Warning Report, June 13, 2012, S.M.D.F. Ex. D) On June 18, 2012, Plaintiff received a "verbal warning" for attendance infractions that occurred between January, 2012, and June, 2012. (Gist Dep. at 88:18-24, 90:9-15) On or about June 21, 2012 Plaintiff received a "final written warning" after he left work mid-shift for approximately one hour and forty-five minutes without clocking out or notifying a supervisor. (Gist Dep. at 100:19-102:2; Emp. Warning, June 21, 2012, S.M.D.F. Ex. E)

On July 31, 2012, two of Plaintiff's co-workers, C.J. Wyant ("Wyant") and Richard Clements ("Clements"), took photos of Plaintiff sleeping in the maintenance office. (Richard Clements Dep. at 17:20-18:9, Jan. 24, 2014) Wyant and Clements showed the photos to supervisor Robert Cuccorelli ("Cuccorelli"), who forwarded them to Guthrie. (Robert Cuccorelli Dep. at 17:19-18-4, 24:7-12, Jan. 24, 2013) As a result, on August 1, Guthrie and human resources manager Lori Kirkpatrick ("Kirkpatrick") met with Plaintiff to discuss the photos, and ultimately suspended

3

Plaintiff for three days for sleeping during his shift.[4]  (Gist Dep. at 128:13-129:12; Guthrie Dep. at 36:17-38:3; Lori Kirkpatrick Dep. at 20:17-21:4, Dec. 19, 2013)  As the meeting ended, Guthrie walked Plaintiff out of the building to Plaintiff's car.  (Gist Dep. at 151:23-152:6; Guthrie Dep. at 46:12-23; Kirkpatrick Dep. at 23:5-24)  Upon exiting the building, Guthrie and Plaintiff exchanged words, though each disputes the details and substance of the conversation.  (Gist Dep. at 152:1-153:6; Guthrie Dep. at 34:10-35:13, 53:23-54:9)

According to Guthrie, Plaintiff yelled at Guthrie, "dropping the F bomb left and right, saying you mother fucker, this is fucking bullshit, I am the best fucking worker you have here," and that Gist "got in his car and . . . took off [through the parking lot] . . . at a high rate of speed."  (Guthrie Dep. at 34:19-35:13)  Plaintiff asserts that although he expressed disagreement with the decision to suspend him, he did not yell or use offensive language, nor did he say or do anything that Guthrie could have perceived as insubordinate or threatening. (Gist Dep. at 152:21-153:6, 154:17-155:10)  According to

---

[4] The record does not clearly resolve whether the suspension was the only disciplinary action that Burlington planned to impose, or whether an investigation could lead to further disciplinary action.  (Kirkpatrick Dep. at 20:9-13; Kurt Simmons Dep. at 37:5-10, Dec. 19, 2013)  In addition, the record is unclear as to whether Plaintiff was sleeping during his break, which is permissible, or while he was on duty.  (See S.M.D.F. ¶¶ 18-19, 24; A.S.U.M.F. ¶ 14; Gist Dep. at 150:25-151:2)  This factual dispute is immaterial to the pending motion, and the Court need not address it further.

4

Plaintiff, Guthrie may have heard a loud intake due to modifications of Plaintiff's car, but he could not have sped through the parking lot because speeding over the parking lot's speed bumps "would potentially destroy [Plaintiff's] car." (Gist Dep. at 155:11-156:12)

Following the exchange, Guthrie returned to Human Resources and verbally reported feeling threatened by Plaintiff's behavior and use of profanity. (Kirkpatrick Dep. at 24:1-10; A.S.U.M.F. ¶ 16) In recounting the confrontation, Guthrie explained that he was "very uncomfortable," feared that Plaintiff might hit him, and told Kirkpatrick that he never wanted to escort disciplined employees off the property again. (Guthrie Dep. at 54:4-9)

As Plaintiff began serving his suspension, Guthrie left for his scheduled vacation on Friday, August 3. (Guthrie Dep. at 58:10-59:7; Guthrie Decl. ¶ 5) At the request of Kirkpatrick, Guthrie stopped in Human Resources before leaving for his vacation, where he dictated a statement to Kirkpatrick summarizing the reason and terms for Plaintiff's August 1 discipline. (Guthrie Decl. ¶ 6) Guthrie's statement, signed and dated August 1, explained the basis for Plaintiff's three-day suspension and the contents of their disciplinary meeting, but omitted any mention of the confrontation in the parking lot. (Id.)

Plaintiff returned to work on Tuesday, August 7, meeting first with Human Resources before returning to his job in the warehouse. (Gist Dep. at 156:24-158:8) In that meeting with Kurt Simmons ("Simmons"),[5] Plaintiff learned that Guthrie reported Plaintiff's alleged threatening behavior to Human Resources, and that Simmons intended to speak with Guthrie about the allegation upon Guthrie's return from vacation. (Gist Dep. at 158:21-159:6; Kirkpatrick Dep. at 27:20-28:18) Defendants claim, and Plaintiff denies, that Human Resources further informed Plaintiff during the meeting that his alleged threatening behavior could lead to further disciplinary action, including termination. (Gist Dep. at 159:7-13; Kurt Simmons Dep. at 32:12-33:1, 36:17-37:1, Dec. 19, 2013)

On Monday, August 13, Plaintiff witnessed an altercation in the warehouse between two co-workers. (A.S.U.M.F. ¶ 26) On that evening, Plaintiff worked alongside his African-American colleague Jeffrey Mitchell ("Mitchell"), as well as Wyant and Clements (both Caucasian). (Gist Dep. at 170:17-25) As the four set to work squeegeeing an area that had flooded, Mitchell remarked to Wyant and Clements that they should get back to work. (Jeffrey Mitchell Dep. at 90:14-16, Oct. 15, 2013) In

---

[5] Plaintiff could not recall whether he met with Kirkpatrick or with Kurt Simmons. (Gist Dep. at 156:24-157:13) Defendants state, and Plaintiff does not dispute, that Gist met with Simmons, director of human resources for supply chain and distribution centers. (Kurt Simmons Dep. at 32:12-33:1, Dec. 19, 2013)

response, Wyant said, "no, you get back to work Nigger," to which Mitchell replied, "what did you say to me Faggot?"  (Id. at 98:15-16, 107:6-7; Gist Dep. at 171:5-25)

Immediately following this exchange, the conversation ended, and Plaintiff went with Mitchell to report the incident to supervisor Ryan Ward ("Ward").  (Gist Dep. at 173:6-11)  Ward instructed the two men to write down reports of what occurred, which Plaintiff completed that evening.  (Gist Dep. at 173:3-11, 177:13-25; Witness Incident Report from James Gist, Aug. 13, 2012, Pl.'s Ex. L)

The next day, Tuesday, August 14, Guthrie returned from his vacation and immediately met with Kirkpatrick and Simmons concerning Guthrie's August 1 parking lot confrontation with the Plaintiff.  (Kirkpatrick Dep. 32:24-33:20; Guthrie Dep. at 70:12-71:13; Guthrie Decl. ¶ 8 Simmons Dep. at 42:7-8)  At Simmons's request during this meeting, Kirkpatrick forwarded Guthrie a copy of Guthrie's August 3 statement, to which Guthrie added a new paragraph describing Plaintiff's alleged threatening behavior in the parking lot on August 1.  (Guthrie Decl. ¶ 9) Guthrie provided this amended statement to Simmons later that morning.  (Id.)

Shortly after updating Guthrie's statement on August 14, Defendants terminated Plaintiff's employment due to "improper personal conduct" stemming from Plaintiff's alleged threatening

behavior on August 1.  (Simmons Dep. at 59:17-60:5; Guthrie Dep. at 34:11-35:18; Employee Termination for James Gist, S.M.D.F. Ex. N)  His termination occurred less than twenty-four hours after Plaintiff's report of the dueling racial and homophobic slurs between Mitchell and Wyant as they worked in the warehouse the prior evening.

On February 22, 2013, Plaintiff filed a Complaint in this Court alleging that his discharge was retaliatory, coming in response to Plaintiff's report of Wyant's August 13 racial slur. Plaintiff seeks to recover pay and benefits that he would have received but for Defendants' termination of his employment as well as punitive damages.  Following discovery, Defendants brought this motion for summary judgment on all claims.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of

8

material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 249, 252 (1986). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Id.* at 249.

## III.

Plaintiff's two-count Complaint brings parallel claims for retaliation in violation of 42 U.S.C. § 1981 and the NJLAD.[6]

---

[6] In his Complaint, Plaintiff also brings parallel claims for discrimination under § 1981 and the NJLAD. (Compl. ¶¶ 23, 27) However, Plaintiff's opposition brief expressly abandons any theory of liability for discrimination and proceeds solely in defending against summary judgment on the § 1981 and NJLAD retaliation claims. (Pl.'s Mem. of Law in Opp. at 1, n.1) Federal Rule of Civil Procedure 56(e) states that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." *See also Duran v. Merline*, 923 F. Supp. 2d 702, 723 (D.N.J. 2013) ("Plaintiff has apparently abandoned [his] claim . . . since his opposition papers do not proffer any facts or evidence to support

9

"Claims under 42 U.S.C. § 1981 are generally evaluated under the *McDonnell-Douglas* burden-shifting framework," which applies the same analysis to retaliation claims under the NJLAD. *Motto v. Wal-Mart Stores East, LP*, --- F. App'x ---, 2014 WL 1345118, at *3 (3d Cir. Apr. 7, 2014) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410, 415 (3d Cir. 1999)); *see also Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 489-99 (3d Cir. 1999) ("Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim.").

The Title VII burden-shifting framework begins by requiring the plaintiff to establish a *prima facie* case of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010). The burden of production then shifts to the employer to articulate a "legitimate, nondiscriminatory reason for the [adverse employment action]."[7] *McDonnell Douglas*, 411 U.S. at 802. If the employer satisfies this burden, the plaintiff must then produce evidence to show that the

---

it."); *Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 637 (D.N.J. 1997) (rejecting claims that were "expressly abandoned by plaintiff when he failed to address them in response to defendants' motion for summary judgment."). Accordingly, the Court will grant summary judgment as to Plaintiff's § 1981 and NJLAD discrimination claims.

[7] "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This supersedes the presumption in favor of the nonmoving party for purposes of a summary judgment motion.

nondiscriminatory reason was a pretext for retaliation. *Estate of Oliva*, 604 F.3d at 798. The Court addresses each of these steps in turn.

### A.

To establish a *prima facie* case of retaliation under § 1981 or the NJLAD, a plaintiff "must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Hutchins v. United Parcel Serv., Inc.*, 197 F. App'x 152, 156 (3d Cir. Aug. 3, 2006) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).

For a complaint to "amount to 'protected activity,' it must implicate an employment practice made illegal by [§ 1981]." *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. Mar. 10, 2011) (per curiam) (citing *Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). In other words, a plaintiff must hold an "objectively reasonable belief, in good faith, that the activity he opposes is unlawful." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam)); *see also Fogelman v. Greater Hazleton Health Alliance*, 122 F. App'x 581, 583 (3d Cir. 2004).

As the Supreme Court reiterated in *Breeden*, "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to [discrimination]." *Breeden*, 532 U.S. at 271 (first two alterations in original) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "To put it differently, if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected." *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 322 (3d Cir. 2008).

Unlike a single isolated comment that might be construed as an offhand remark, the abrupt use of a racial slur directing an African-American colleague to "get back to work," gives rise to an objectively reasonable belief of unlawful discrimination. Such a remark may have been abrupt and unexpected, but is easily distinguished from mere teasing or a single offhand comment. In addition, Plaintiff's prompt reporting to the nearest manager was undisputedly made in good faith. As a result, Plaintiff has demonstrated that he engaged in a protected activity.

Defendants do not challenge the second element of Plaintiff's *prima facie* claim, requiring a showing that Plaintiff suffered an adverse employment action. Termination from employment clearly constituted such an action, and there is no dispute as to the satisfaction of this element.

Finally, Plaintiff contends that his termination from employment just one day after reporting his co-worker's use of a racial slur in the workplace is sufficient to demonstrate a causal link between his protected activity and termination from employment.  The Third Circuit has previously held "that temporal proximity between the employee's protected activity and the alleged retaliatory action may satisfy the causal link element of a prima facie retaliation claim, at least where the timing is 'unusually suggestive of retaliatory motive.'"  *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 504 (3d Cir. 1997)).  Where such temporal proximity exists, "it is sufficient standing alone to create an inference of causality and defeat summary judgment."  *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citing *Breeden*, 532 U.S. at 273-74).

Temporal proximity of just two days has previously been considered unusually suggestive of causation.  *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989); *see also*, *e.g.*, *Reinhart v. Mineral Techs. Inc.*, No. 05-cv-4203, 2006 WL 4050695, at *11 (E.D.Pa. Nov. 27, 2006) (considering twenty-four hours unusually suggestive).  On the other hand, a two to three month lag is generally not construed as unusually suggestive of a retaliatory motive.  *See*, *e.g.*, *LeBoon*, 503 F.3d at 233.

13

Here, Plaintiff reported his colleague's use of a racial slur on August 13. Just one day later, upon Plaintiff's arrival at work on August 14, his employment was terminated in a meeting with Guthrie and Kirkpatrick. His discharge from employment, coming less than twenty-four hours after reporting the racial slur, satisfies Plaintiff's burden at the *prima facie* stage — the temporal proximity of Plaintiff's termination is unusually suggestive that Plaintiff's termination resulted from Defendants' retaliatory motive.[8]

---

[8] The Supreme Court recently amended the causation standard applied to Title VII retaliation claims. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2532-33 (2013). Under this amended standard, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* When applying this heightened causation standard to Title VII cases, the Third Circuit has validated the temporal proximity analysis, indicating that close temporal proximity is considered unusually suggestive of but-for causation. *See Blakney v. City of Phila.*, 559 F. App'x 183, 185-86 (3d Cir. Mar. 19, 2014) (reviewing temporal proximity standard in Title VII case post-*Nassar*); *Verma v. Univ. of Pa.*, 533 F. App'x 115, 119 (3d Cir. Aug. 7, 2013) (noting that, in a Title VII retaliation case under *Nassar*'s causation standard, temporal proximity between the protected activity and retaliatory action may satisfy causation). The Third Circuit has not yet determined whether the *Nassar* heightened causation standard applies to § 1981 retaliation claims, but a recent unpublished opinion considering a § 1981 retaliation claim suggests that but-for causation indeed applies. *See Motto v. Wal-Mart Stores East, LP*, --- F. App'x ---, 2014 WL 1345118, at *3 n.3 (3d Cir. Apr. 7, 2014) ("Both parties raise the issue of the relevance of the Supreme Court's decision in [*Nassar*], which held that a 'but-for' causation standard applies to retaliation claims under Title VII. While it is generally the practice of this court to apply the same standard for retaliation claims under Title VII as to claims under 42 U.S.C. § 1981, see, e.g., *Jones*, 198 F.3d at 410, we need not decide the question now because we find that Motto cannot make the required showing in any case."). Regardless of whether a heightened causation standard were imposed, the application of *Nassar* does not impact the analysis above because the demonstration of close temporal proximity (less than twenty-four hours between Plaintiff's report and his termination) is unusually suggestive, an accepted ground for demonstrating Title VII but-for causation in accordance with *Blakney* and *Verma*.

14

### B.

Having made his *prima facie* case, the burden of production now shifts to Defendants to proffer a legitimate, nonretaliatory reason for Plaintiff's termination. *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). This "relatively light" burden is satisfied if "the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Id.* (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Defendants satisfy this burden by providing Guthrie's August 14 statement indicating Plaintiff threatened Guthrie, and Plaintiff's termination resulted from that inappropriate conduct.

Following this showing, the burden of production returns to the Plaintiff to provide evidence "from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Burton*, 707 F.3d at 426 (citing *Fuentes*, 32 F.3d at 764). This showing requires "the plaintiff [to] point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not

15

a motivating or determinative cause of the employer's action."
*Fuentes*, 32 F.3d at 764.

To discredit the employer's proffered reason, as Plaintiff
seeks to do in the pending matter, a plaintiff "cannot simply
show that the employer's decision was wrong or mistaken." *Id.*
at 765. Instead, the nonmoving party "must demonstrate such
weaknesses, implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered legitimate reasons
for its action that a reasonable factfinder *could* rationally
find them 'unworthy of credence,'" and therefore infer that the
employer's purported non-discriminatory motive was simply
pretext. *Id.* (quoting *Ezold v. Wolf, Block, Schorr and Solis-
Cohen*, 983 F.3d 509, 531 (3d Cir. 1992)).

Plaintiff satisfies his burden by highlighting a factual
inconsistency and implausibility surrounding Defendants' reason
for his termination. In particular, Plaintiff highlights the
inconsistency between Guthrie's August 1 statement regarding the
circumstances of Plaintiff's suspension, and Guthrie's August 14
statement that was ultimately used to justify Plaintiff's
termination.

According to Plaintiff, Guthrie testified in his deposition
that after facing Plaintiff's alleged threats in the parking lot
on August 1, Guthrie immediately walked back to Kirkpatrick's
office and told her about Plaintiff's threatening and

16

intimidating remarks.  Such statements were so memorable that Guthrie insisted he was uncomfortable, feared physical harm, and never again wished to escort an employee out for discipline. Despite Guthrie's verbal report of the threats, his statement concerning Plaintiff's suspension — prepared two days later at the request of Kirkpatrick, a human resources professional — completely omitted any mention of these threats.  Less than two weeks later, Guthrie prepared an amended statement on August 14, which was used to justify Plaintiff's termination.  That amended statement contains an additional four sentences detailing Plaintiff's allegedly threatening behavior.  The distinction between the two statements may be attributed to one of two possible circumstances: (1) Plaintiff did not threaten Guthrie on August 1, or (2) Plaintiff threatened Guthrie, but Guthrie nonetheless omitted the threat.

The former possibility gives rise to a clear inconsistency in Guthrie's August 14 statement.  Indeed, if no confrontation actually occurred, a reasonable factfinder could infer that the August 14 amended statement, updated to contain details about the confrontation, was pretext for a retaliatory termination.[9]

---

[9] Defendants contend that any inconsistency between Guthrie's two statements or the substance of Plaintiff's alleged threats is immaterial because Plaintiff is charged with demonstrating that his termination would not have been caused but for Defendants' retaliatory intent, in accordance with *Nassar*.  (See Defs.' Reply Br. at 10-11)  As described *supra*, causation under the *Nassar* standard may still be inferred with close temporal proximity.  See *Blakney*, 559 F. App'x at 185-86; *Verma*, 533 F. App'x at 119.

In considering the latter possibility, Defendants contend that Guthrie's omission of the August 1 confrontation was a simple oversight, and that despite any factual dispute over the confrontation, the omission of Plaintiff's threats from Guthrie's August 3 statement is irrelevant. Defendants argue that the omission results from two simple explanations: Guthrie was on his way out for vacation when he hurriedly prepared his statement on August 3, and he believed that Plaintiff would be terminated regardless of their confrontation, so he did not wish to "pile on."

These rationales, however, are implausible under the *Fuentes* pretext analysis. If Plaintiff's threats were as serious as to give rise to a terminable offense — indeed, so serious that Guthrie apparently told Kirkpatrick that he never wanted to escort disciplined employees like Plaintiff out of the building again — Guthrie could have written as little as one additional sentence on August 3, describing the exchange and undercutting the charges of any inconsistency. The failure to do so demonstrates an implausibility that could permit a reasonable factfinder to conclude that the amended August 14 statement was mere pretext for Plaintiff's retaliatory termination. As a result, Defendants are not entitled to summary judgment on Plaintiff's § 1981 and NJLAD retaliation claims.

18

## IV.

Guthrie also seeks summary judgment on a second ground, contending that he has no personal liability in this matter. As with his employer, Guthrie is entitled to summary judgment on Plaintiff's abandoned claims for discrimination and his motion will be granted to that extent. However, the Court must deny Guthrie's motion as to Plaintiff's retaliation claims.

Under § 1981, individuals including "directors, officers, and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by § 1981." *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986). Individuals that "are personally involved in the discrimination," and intentionally caused, authorized, directed, or participated in the discriminatory conduct may be held liable. *Id.*

Similarly, the NJLAD's anti-retaliation provision deems it unlawful for "any person to take reprisals against any person because that person has opposed any practices or acts" that the NJLAD prohibits. N.J.S.A. 10:5-12(d); *see Hargrave v. Cnty. of Atl.*, 262 F.Supp. 2d 393, 436 (D.N.J. 2003) ("Thus, [the NJLAD anti-retaliation] provisions, like the provisions establishing liability for those employees who 'aid' and 'abet' an employer's unlawful employment practices, expressly contemplate direct liability for individual supervisory employees.").

19

The undisputed factual record does not establish that Guthrie is entitled to judgment as a matter of law.  Despite conflicting statements in Defendants' briefing, Guthrie conceded in his deposition (and Kurt Simmons confirmed in a sworn interrogatory response) that Guthrie was involved in the decision to terminate Plaintiff.  (Defs.' Interrogatory Resp ¶ 4; Guthrie Dep. at 70:22-71:13)  In view of Guthrie's supervisory position, his acknowledged role in determining Plaintiff's termination, and the factual dispute concerning Plaintiff's threats on August 1, the Court cannot grant summary judgment to Guthrie on the assertion of individual liability.

### V.

In light of the foregoing, Defendants' motion for summary judgment will be granted as to Plaintiff's discrimination claims under § 1981 and NJLAD, and denied as to Plaintiff's retaliation claims under § 1981 and NJLAD.  An appropriate Order accompanies this Opinion.

Date: 8/19/14

JOSEPH E. IRENAS, S.U.S.D.J.

20